**In re Michael E. KIMSEY.**

**Michael E. Kimsey, Plaintiff,**

v.

**Paul Suskie, North Little Rock City Attorney, Defendant.**

**Bankruptcy No. 00–44995S.
Adversary No. 00–4175.**

United States Bankruptcy Court,
E.D. Arkansas,
Western Division.

June 11, 2001.

Joyce Bradley Babin, Chapter 13 Trustee.

Robert R. Danecki, Little Rock, AR, for plaintiff.

### ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE is before the Court upon the debtor plaintiff's Motion for Summary Judgment filed on April 2, 2001, and the defendant's cross Motion for Summary Judgment, filed on April 4, 2001. In his

complaint for injunctive relief, the debtor seeks to compel reinstatement of his driver's license which was revoked, prepetition, for failure to pay traffic fines. The parties do not dispute the relevant facts.

## I.

During the period from November 20, 1993, through January 2000, Kimsey was repeatedly cited for violating the traffic laws of the State of Arkansas, including driving without his driver's license, unsafe driving, failing to have proof of liability insurance (and, in a subsequent year, failing to have liability insurance), leaving the scene of an accident, driving on a suspended license, and failing to yield the right of way. In all, the debtor's traffic record reflects twelve violations of the traffic laws. Most of these violations occurred within the last two years. He pleaded guilty to each of these violations and was sentenced to pay fines. Kimsey also failed to appear and answer a summons and, thereby, incurred yet another fine. Upon his failure to pay any of the fines, the City of North Little Rock suspended Kimsey's state driver's license. Thereafter, Kimsey filed, on November 1, 2000, his chapter 13 petition.

The chapter 13 plan proposed to pay the traffic fines and, there being no objection to the plan, it was confirmed. The City of North Little Rock, however, did not, upon the filing of the chapter 13 petition or upon plan confirmation reinstate the debtor's driver's license, prompting the debtor to file this adversary proceeding. The debtor asserts that the failure to reinstate his driving privileges is a violation of the automatic stay provision, 11 U.S.C. § 362(a)(6), and the antidiscrimination provision of 11 U.S.C. § 525.

## II.

Section 362(a)(6) provides that the filing of a bankruptcy case stays "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." The debtor asserts that the City of North Little Rock violates this provision because it refuses to reinstate his driver's license unless he pays his traffic fines. There is no evidence, however, that the City has in fact taken any action to collect the debt, and the mere refusal to lift the suspension of his license is not a violation of the stay. *See In re Raphael*, 238 B.R. 69, 78 (D.N.J.1999); *cf. Geiger v. Commonwealth of Pennsylvania (In re Geiger)*, 143 B.R. 30 (E.D.Pa.1992), *aff'd*, 993 F.2d 224 (3d Cir.1993)(a driver's license, being a privilege, is not property of the estate and, thus, failure to reinstate a license is not exercise of control over property of the estate). The evidence before the Court is that, prior to the filing of the chapter 13 case, the debtor's license was validly suspended for his failure to comply with the laws of the State of Arkansas and there is no requirement in the Bankruptcy Code, including section 362, that a governmental unit reinstate the privilege to operate a motor vehicle simply because the individual later files a bankruptcy case. Thus, the City is not in violation of the automatic stay for refusing to lift the suspension of his driving privileges.

The debtor asserts that this Court's decision in *Walters v. Sherwood Municipal Court (In re Walters)*, 219 B.R. 520 (Bankr.E.D.Ark.1998) supports his position. While the factual situation in this case is similar to the facts of *Walters*, there are crucial distinctions which preclude application of that authority here. In *Walters*, the Sherwood Municipal Court had, upon conviction of a crime, imposed a sentence requiring Walters to pay restitution. Some time later, she filed a chapter 13 petition, provided for full payment of

the obligation through her confirmed plan, and began making her plan payments. The Sherwood Municipal Court, however, failed to file a proof of claim so that the trustee was precluded from remitting the payments to that creditor. Since it received none of the funds Walters was paying to the chapter 13 trustee, the municipal court issued a warrant for debtor's arrest. When the debtor was involved in a car accident, the police discovered an outstanding warrant for nonpayment of the restitution and incarcerated her. This Court concluded that this was a violation of the automatic stay and awarded damages against the Sherwood Municipal Court.[1]

In *Walters*, the Court began its analysis with the well settled proposition that a creditor is required to act affirmatively to reverse actions which, if carried out, would violate the automatic stay. In the case of Walters, the Sherwood Municipal Court was required, upon notification of the filing of the chapter 13 petition, to rescind its warrant for her arrest, or ensure that one was not issued for nonpayment, because, if she were arrested after the filing of the case due to the nonpayment of the obligation, a violation of the stay would occur. Kimsey's situation is different in that all of the City's acts were concluded prior to the time the bankruptcy petition was filed. On the day of the filing of his chapter 13 petition, Kimsey had already lost his license. There were no further actions the City needed to take in order to enforce its regulatory power or to collect the debt. Similarly, had Walters been arrested and incarcerated before she filed her chapter 13 petition, this Court would not have acted to direct her release upon the filing of the chapter 13 case. Indeed, this Court has consistently denied debtor requests for

release from incarceration or similar requests to preclude governmental units from enforcing their police and regulatory powers. *See, e.g., Cornelious v. Bishop (In re Cornelious)*, 214 B.R. 588 (Bankr. E.D.Ark.1997); *In re Williams*, 144 B.R. 850 (Bankr.E.D.Ark.1992). *Cf. Womack v. Mays (In re Womack)*, 253 B.R. 247, 248 & n. 2 (Bankr.E.D.Ark.2000)(incarceration for failure to pay child support).

Kimsey's situation is more akin to the incarcerated individual who seeks to utilize the bankruptcy court to obtain release from jail. Unlike the situation in *Walters*, here, the City had already taken its actions in collection of the debt before the case was filed: it imposed the further sentence or punishment of suspending the debtor's driver's license. Just as the City would not be compelled to release a prisoner upon the filing of a chapter 13 petition, the City is not required to lift the suspension of the debtor's driver's license simply because the debtor suffered the consequences of failing to comply with the terms of his sentence.

### III.

■ The Bankruptcy Code provides in pertinent part:

[A] governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, sole-

---

1. It did not aid the municipal court's position that it created the default in payments by

failing to "participate" in the chapter 13 case by failing to file a proof of claim.

ly because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

11 U.S.C. § 525(a). This provision protects debtors from acts of discrimination by governmental units when the discrimination is due solely to the fact that the debtor filed a bankruptcy petition, was insolvent, or failed to pay a discharged obligation. In this instance, the City is not refusing to reinstate the debtor's license because of his bankruptcy filing, but, rather, seeks to enforce the traffic laws which permit termination of the driving privilege based upon violations of the law. Section 525(a) protects Kimsey's right to hold a valid driver's license free from discriminatory action based upon his bankruptcy filing; it does not bar the City from enforcing the terms of the laws and policies under which it operates in an effort to safeguard the public from individuals who repeatedly violate the traffic laws. *See Geiger v. Commonwealth of Pennsylvania (In re Geiger)*, 143 B.R. 30 (E.D.Pa.1992), *aff'd*, 993 F.2d 224 (3d Cir.1993). Section 525(a) is not intended to shield a debtor from responsibilities under the traffic laws or other government obligations. Thus, section 525 does not operate to cure Kimsey's traffic violations, including the failure to comply with the criminal sentence imposed upon him, and does not require the City to reinstate a privilege afforded by the state to drive a motorized vehicle. *Cf. Smith v. St. Louis Housing Authority (In re Smith)*, 259 B.R. 901 (8th Cir. BAP 2001). While the City may be required to consider future applications for reinstatement of the license after the debtor has complied with the law, it is not required to reinstate the license which was validly suspended prepetition. Thus, the refusal to reinstate the license is not a violation of section 525(a). *Cf. id.*

## IV.

■ The policy of ensuring a "fresh start" does not require a governmental entity to insulate the debtor from all adverse consequences of filing a bankruptcy petition or, indeed, his own failure to comply with the traffic laws, including payment of fines. While it is true that the bankruptcy court has the authority to enforce specific provisions of the Code, including the authority to confirm a plan and discharge debts, a bankruptcy court does not have the power to relieve a party of all of the burdens that may be created by nonpayment of debt. "The filing of bankruptcy does not necessarily cure the collateral consequences that [are] created by the debt," *In re Raphael*, 238 B.R. 69, 78 (D.N.J.1999), and a governmental entity cannot be compelled to restore a license that was validly suspended prior to the filing of the bankruptcy due to the debtor's prepetition conduct. The mere fact that the debtor proposes to pay his fines through his chapter 13 plan does not cure his previous acts nor operate to lift the suspension of a license that was revoked, after repeated traffic violations, prepetition. Accordingly, it is

**ORDERED** that the debtor plaintiff's Motion for Summary Judgment filed on April 2, 2001, is Denied and the defendant's Motion for Summary Judgment, filed on April 4, 2001, is Granted. Judgment shall be entered in favor of the defendant.

**IT IS SO ORDERED.**

## *JUDGMENT*

This action came on before the Court, Honorable Mary Davies Scott, U.S. Bankruptcy Judge, presiding, upon cross motions for summary judgment and the issues having been duly considered and a decision having been duly rendered,

**It is Ordered and Adjudged** that judgment is rendered in favor of the defendant Paul Suskie, North Little Rock City Attorney and the complaint is Dismissed.

**It is so Ordered.**